# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN BROCKOVICH, on behalf of the United States of America,<br><br>Plaintiff,<br><br>v.<br><br>SCRIPPS HEALTH, a California corporation; and DOES 1 through 250,<br><br>Defendants. | CASE NO: 06-CV-1569-W (NLS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

On June 13, 2006, Plaintiff Erin Brockovich commenced this action on behalf of the United States against Defendant Scripps Health and Does 1–250 in the San Diego County Superior Court. On August 8, 2006, Defendant filed a notice of removal to this court under 28 U.S.C. § 1441. Plaintiff claims damages under the Medicare Secondary Payer Act (MSP), 42 U.S.C. § 1395(y)(b). Defendant moves to dismiss. The Court decides the matter on the papers submitted and without oral argument. See Civil Local Rule 7.1(d.1). The Court **GRANTS** Defendant's motion to dismiss.

## I. BACKGROUND

Plaintiff seeks to recover conditional payments Medicare made to Defendant, a regional health care delivery network that operates acute care hospitals and other health care facilities. Plaintiff alleges that on numerous occasions Defendant, by and through its employees and agents, caused harm to Medicare recipients who were patients in Defendant's hospitals. (Compl. ¶ 6.) According to Plaintiff, as a health care provider participating in Medicare and carrying its own risk, Defendant must reimburse Medicare for any medical service, treatment, or medication necessary to treat injuries it caused. In other words, if Medicare advanced a conditional payment to treat a Medicare beneficiary, the MSP obligates Defendant to reimburse Medicare for these payments as a "primary payer." (Id. at ¶ 7.)

In response, Defendant filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## II. LEGAL STANDARD

Rule 12(b)(1) provides that a court may dismiss a claim for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Because subject matter jurisdiction affects the court's power to hear a case, parties cannot waive it, and the court must dismiss an action if it lacks jurisdiction. Fed. R. Civ. P. 12(b)(1); Csibi v. Fustos, 670 F.2d 134, 136 n.3 (9th Cir. 1982).

By contrast, a motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See N. Star Int'l. v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). In ruling on a motion to dismiss, the court assumes the truth of all factual allegations and construes them in the light most favorable to the plaintiff. Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002). The court may dismiss, however, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45–46 (1957)).

Because Plaintiff claims under the complex MSP statute, the Court will first outline how it operates. Medicare, first enacted in 1965, provides health insurance to eligible aged and disabled persons, and for persons with end-stage renal disease. 42 U.S.C. § 1395c; Kaiser v. Blue Cross, 347 F.3d 1107, 1109 (9th Cir. 2003). "Responding to skyrocketing Medicare costs, Congress in 1980 enacted the Medicare Secondary Payer legislation . . . requiring Medicare to serve as the secondary payer when a beneficiary has overlapping insurance coverage." Zinman v. Shalala, 67 F.3d 841, 843 (9th Cir. 1995).

Under the MSP, a Medicare payment "may not be made . . . with respect to any item or service to the extent that payment has been made or can reasonably be expected to be made" under a primary plan. 42 U.S.C. § 1395y(b)(2)(A). A primary plan is "a group health plan or large group health plan . . . and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part." 42 U.S.C. § 1395y(b)(2)(A)(ii).

As relevant here, the MSP permits conditional payments "with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly." 42 U.S.C. § 1395y(b)(2)(B)(i). A primary plan, or any entity that receives payment from a primary plan, is responsible for reimbursing Medicare "for any payment made . . . with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii).

The United States may enforce the reimbursement obligations in two ways: one, through a direct action against the primary plan; or two, through a statutory subrogation action in the shoes of the provider who received the conditional payment. 42 U.S.C. § 1395y(b)(2)(B)(iii)–(iv). In 1986, Congress established "a private right of action for

1  damages (which shall be in an amount double the amount otherwise provided) in the
2  case of a primary plan which fails to provide for primary payment (or appropriate
3  reimbursement)." 42 U.S.C. § 1395y(b)(3)(A).  Plaintiff has filed suit to enforce the
4  reimbursement obligation under this statute.  Defendant claims she has no standing, or
5  even if she has standing, she has not alleged facts sufficient to trigger the reimbursement
6  obligation.

## III. DISCUSSION

### A. PLAINTIFF LACKS STANDING TO ASSERT HER CLAIM

Defendant argues that Plaintiff lacks standing to bring this action because she does not allege any injury in fact.  (Mot. to Dismiss at 7.)  Plaintiff does not allege she was injured by Defendants' conduct, that she ever received treatment at any Scripps hospital, or even that she is a Medicare beneficiary or Medicare eligible.  Plaintiff responds that the MSP statute is a *qui tam* statute which does not require injury to the plaintiff.  (Pl.'s Mem. in Opp. to Mot. to Dismiss [Pl.'s Opp.] at 6.)  The Court holds that Plaintiff lacks Article III standing.

#### 1. Article III Requires Injury-in-Fact

The Supreme Court has frequently explained that standing is an essential and unchanging part of Article III's case-or-controversy requirement for federal jurisdiction. Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000). Thus, if Plaintiff lacks standing, the court must dismiss her claim for lack of subject matter jurisdiction.  Cetacean Community v. Bush, 386 F.3d 1169, 1175 (9th Cir. 2004).  To show Article III standing, Plaintiff must demonstrate (1) injury in fact; (2) a traceable connection between the alleged injury in fact and the alleged conduct of defendant; and (3) redressability of the alleged injury.  Vermont, 529 U.S. at 771. Plaintiff never alleges injury to herself, nor do her allegations permit the inference that she has suffered any injury.  Thus, she lacks standing under Article III.

#### 2. The MSP Legislation Is Not a *Qui Tam* Statute

Plaintiff does, however, claim injury to the Medicare Trust Fund. She argues that because the United States has suffered injury-in-fact, she may sue to redress that injury through the MSP statute because it is a *qui tam* statute. The Court disagrees.

A *qui tam*[1] action is "an action under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." United States v. Kitsap Physicians Serv., 314 F.3d 995, 997 n.1 (9th Cir. 2002) (quoting Garner, Dictionary of Modern Legal Usage at 728 (2d ed. 1995). A private person (called the relator) may bring a *qui tam* civil action in their own name as well as on behalf of the United States. Vermont, 529 U.S. at 768. "*Qui tam* plaintiffs are merely agents suing on behalf of the government, which is always the real party in interest." Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 768 (9th Cir. 1997).

Still, Article III standing requirements apply to *qui tam* suits. The complaining party must assert an injury-in-fact even when bringing a claim on behalf of the United States. The relator has standing under Article III because courts have long recognized that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor." Vermont, 529 U.S. at 773. *Qui tam* statutes, such as the False Claims Act, "can reasonably be regarded as effecting a partial assignment of the Government's damages claim." Id.

But "[t]here is no common law right to maintain a qui tam action; authority must always be found in legislation." Conn. Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81, 84 (2d. Cir. 1972). The fatal defect in Plaintiff's argument lies here, because the MSP does not create a cause of action for private parties on behalf of the United States. As stated above, the MSP provides two distinct causes of action. The first cause of action allows the United States to "bring an action against any or all entities that are or were required or responsible to make payment . . . under a primary plan." See 42

---

[1] *Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means "who pursues this action on our Lord the King's behalf as well as his own." Vermont, 529 U.S. at 768 n1.

U.S.C. § 1395y(b)(2)(B)(iii). The second, in a separate subsection of the statute, allows private parties to bring an action if the primary plan fails to pay for services or reimburse the government. 42 U.S.C. § 1395y(b)(3). By contrast, the False Claims Act expressly states that "[a] person may bring a civil action . . . *for the person and for the United States Government.*" 31 U.S.C. § 3730(b) (emphasis added). Consequently, the Court does not regard either cause of action as "effecting a partial assignment of the government's claim" to any private individual with knowledge of the harm. Therefore, the MSP is not a *qui tam* statute and Plaintiff lacks standing to assert this claim.

Further, the MSP statute lacks typical characteristics of a *qui tam* statute. First, the MSP does not provide a relator's bounty calculated as a *portion* or *percentage* of the United States' recovery, whereas the False Claims Act awards the relator between 15 and 30 percent of the United States' recovery. 31 U.S.C. § 3730(d)(1)–(2). Older "informer" statutes also structured the informer's bounty as a share of the government's recovery.[2] Even Plaintiff's own cited examples provide the informer with a *portion* of the recovery.[3] Second, the MSP does not automatically allocate any of the recovery to the

---

[2] See Act of Mar. 1, 1790, ch. 2 § 3 Stat. 102 (allowing informer to sue for, and *receive half of fine* for, failure to file census return); Act of July 20, 1790, ch. 29, § § 1, 4, 1 Stat. 131, 133 (allowing private individual to sue for, and receive half of fine for, carriage of seamen without contract or illegal harboring of runaway seamen); Act of July 22, 1790, ch. 33, § 3, 1 Stat. 137-138 (allowing private individual to sue for, and receive *half of good forfeited* for, unlicensed trading with Indian tribes); Act of Mar. 3, 1791, ch. 15, § 44, 1 Stat. 209 (allowing person who discovers violation of spirits duties, or officer who seizes contraband spirits, to sue for and receive *half of penalty* and forfeiture, along with costs, in action of debt); cf. Act of Apr. 30, 1790, ch. 9, §§ 16, 17, 1 Stat. 116 (allowing informer to conduct prosecution, and receive *half of fine*, for criminal larceny or receipt of stolen goods). Vermont, 529 U.S. at 777 n.6 (emphasis added).

[3] 18 U.S.C. § 962 grants the informer *one half* of forfeiture the informant helped secure. 46 App. U.S.C. § 723 states that "all forfeitures incurred by virtue of this section shall accrue, one moiety to the informer and *the other to the United States.*" 35 U.S.C. § 292 provides that "[a]ny person may sue for the penalty, in which event *one-half* shall go to the person suing and the other to the use of the United States." The Endangered Species Act Plaintiff cites is irrelevant. It provides that a person may commence a civil suit *in his or her own behalf* for injunctive relief against a person alleged to be in violation of the Act or against the Secretary of the Interior to compel enforcement of the Act. 16

United States. In fact, the plaintiff is entitled to statutory damages equivalent to *double* the amount otherwise recoverable. 42 U.S.C. § 1395y(b)(3)(A). To receive any portion of a plaintiff's recovery under the private cause of action, the United States must bring a subsequent suit against the plaintiff.

Third, Congress added a private cause of action to the MSP during the very same month and year it added a true *qui tam* provision to the FCA. Compare Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, § 9319, 100 Stat. 1874 (1986), with False Claims Amendments Act of 1986, Pub. L. No. 99-562, 100 Stat. 3153 (1986). Congress approved the MSP's private cause of action provision ten days after the FCA amendments. See 1986 U.S.C.C.A.N. 3868, 5266 (1986). Thus, the Court declines to find an implied *qui tam* cause of action in the MSP from vague language when contemporaneous evidence shows Congress knew how to create an express and unequivocal *qui tam* provision when it intended to.

Last, but most important, the United States is not the real party in interest in a suit brought under the MSP's private cause of action. Unlike typical *qui tam* statutes, the MSP does not require the plaintiff to follow procedural safeguards found in modern *qui tam* statutes to ensure the government remains fully apprised of the litigation, has the opportunity to participate, and retains the power to make key decisions over the relator's objections.[4] See United States v. Schimmels, 127 F.3d 875, 882 (9th Cir.

---

U.S.C. § 1540(g)(1).

[4] For example, the FCA protects the United States' interest in the following ways: (1) the relator must serve the complaint and written disclosure of material evidence of the Government before the complaint is served on the defendant; (2) the relator must file the complaint in camera and remain under seal while the Government conducts an investigation, and must not serve defendant except by court order; (3) the Government must either intervene and take over the conduct of the action before the defendant is served or notify the court that the private person will be conducting the action; (4) if the Government proceeds with the action, it has primary responsibility for prosecuting the action, and is not bound by the acts of the relator; (5) the Government may dismiss or settle the action over the objection of the relator; (6) the Government must provide written consent before the case is dismissed; (7) the Government is protected from liability for litigation expenses of the *qui tam* relator;

1997)("[I]n a *qui tam* action, the government is the 'real party in interest.'"). Accordingly, Plaintiff lacks standing to bring this suit because she has not alleged an injury-in-fact to herself, and the MSP does not confer standing to her by a partial assignment of the government's claim. Therefore, the Court dismisses the complaint for lack of subject matter jurisdiction.

### B.   PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE MSP

Congress created a private cause of action under the MSP for double damages "in the case of a primary plan which fails to provide for primary payment" when Medicare reasonably expected such payment to be made, or fails to reimburse Medicare for a conditional payment if it is "*demonstrated* that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(3); 42 U.S.C. § 1395y(b)(1)(B)(ii)(emphasis added). "A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of plan's insured, or by other means." Id.

Plaintiff does not allege a judgment or settlement demonstrates Defendant's liability for any payments made by Medicare. Instead, Plaintiff alleges that responsibility to pay may be demonstrated "by other means." (Pl.'s Opp. at 20.) Plaintiff alleges that Defendant had contractual and quasi-contractual obligations to Medicare to pay (rather than bill Medicare) for medical services or items resulting from its own misconduct. (Pl.'s Opp. at 14.) She argues that Defendant's own internal incident reports, investigations, internal peer reviews, and risk management programs "demonstrate" its responsibility to pay. (Id.) In her view, these documents, together with the governing laws and regulations, constitute sufficient evidence of Defendant's primary responsibility to pay for the resulting medical costs.

---

and (8) the Government receives at least 70% of any recovery. 31 U.S.C. § 3730(b)–(f).

Applying accepted cannons of statutory construction, the Court holds that the phrase "by other means" does not include what amount to nonspecific allegations of misconduct. Under the established interpretive canon of *ejusdem generis*, "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." <u>Wash. State Dep't. of Soc. & Health Servs. v. Guardianship Estate of Keffeler</u>, 537 U.S.371, 384 (2003). Thus, in § 1395y(b)(2)(B)(ii), the two specific means by which a primary plan's liability may be demonstrated limit the scope of "by other means."

Congress enumerated two ways to demonstrate responsibility to pay: a judgment and "a payment conditioned upon the recipients's compromise, waiver, or release," i.e., a settlement. In both of these situations, the primary plan's obligation to pay is established, whether by adjudication or agreement of the primary plan, *before* the MSP action is filed, and with respect to *particular* expenses. Therefore, "by other means" includes other instances of like kind where there is a *previously established* requirement or agreement to pay for *specific* medical expenses Medicare conditionally paid for.

Plaintiff's attempt to demonstrate liability through discovery lacks sufficient commonality with either a judgment or settlement. Plaintiff alleges a novel theory of liability, however, she cannot substantiate it until she obtains the documents she believes will show the acts and omissions giving rise to Defendant's duty to reimburse Medicare. But Plaintiff has not alleged anything suggesting Defendant has a primary responsibility to pay—whether in contract, quasi-contract, or tort—for expenses because she has supplied no dates, no procedures, and no names of beneficiaries. To state a claim under the MSP, Plaintiff must provide more than speculative allegations that she can substantiate once she obtains Defendant's files.

//

Plaintiff argues that the MSP requires only a demonstrated responsibility to pay, not "tort liability." (Pl.'s Opp. at 16.) Nothing in the Court's ruling requires an MSP

1  claimant to demonstrate responsibility to pay under any particular theory of liability.
2  Rather, the MSP requires that the evidence demonstrating responsibility to pay exist
3  *before* a claimant files an MSP action, and be *specific and identifiable*, because those are
4  the common, limiting features of the means Congress enumerated.

5  Furthermore, allowing the issue of liability to be litigated in federal court would
6  drastically expand federal court jurisdiction, by allowing Plaintiff to begin a fishing
7  expedition to find the documents she alleges must exist. Cf. Glover v. Liggett Group,
8  Inc., 459 F.3d 1304, 1309 (11th Cir. 2006) (finding that tort liability must be
9  demonstrated before an MSP private cause of action for failure to reimburse Medicare
10 can proceed). The Court declines to interpret three generic words in a complex
11 statutory scheme—"by other means"—to authorize such an expansion of federal
12 jurisdiction. Instead, the Court limits its interpretation to "demonstrated" means. At
13 this stage of the litigation, an MSP cause of action requires more than a strong "hunch"
14 that the defendant has files that might demonstrate its responsibility to pay. Because
15 Plaintiff failed to state a cause of action, the Court must dismiss the complaint.

17 **IV. CONCLUSION**

18 The Court hereby **DISMISSES THE COMPLAINT WITH PREJUDICE**
19 because Plaintiff lacks standing to assert the claim, or in the alternative, because she
20 fails to state a claim upon which relief can be granted.

22 **IT IS SO ORDERED.**

24 DATED: November 7, 2006

_____
Hon. Thomas J. Whelan
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28